IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RLM BUSINESS SOLUTIONS,       )       CV. NO.  11-00712-DAE-KSC
INC. and DON MASTRANGELO,     )
                              )
         Plaintiffs,          )
                              )
     vs.                      )
                              )
PROCON FLEET SERVICES, LLC    )
d/b/a VEHICLE PATH d/b/a      )
VEHICLEPATH.COM, VEHICLE      )
PATH, INC., DRIVEOK, INC.,    )
GARY SCHNEIDER, REBECCA       )
DIAZ, JENNIFER VEGOS,         )
ALFONSO CECENA, SARAH         )
BARLAM, JOHN L. WOOD,         )
EGERTON MCAFEE ARMISTEAD      )
& DAVIS, P.C., and STARCOMM   )
WIRELESS, INC.,               )
                              )
         Defendants.          )
_____)

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT

On April 9, 2012, the Court heard Plaintiffs RLM Business Solutions,

Inc. and Don Mastrangelo's Motion for Partial Summary Judgment.  P. Adam

Davis, Esq., appeared at the hearing on behalf of Plaintiffs; Lawrence Cohen, Esq.,

appeared at the hearing on behalf of Defendants.  After reviewing the motion and

the supporting and opposing memoranda, the Court **DENIES** Plaintiffs' Motion for

Partial Summary Judgment ("Mot.," Doc. # 29).

BACKGROUND

I.     Factual Background

          This action arises out of a Private Label Agreement ("Contract")

(Doc. # 29-12), entered into on August 20, 2008, between Defendant Procon Fleet

Services, LLC ("Procon") (d/b/a VehiclePath, Inc.) and Hawaiian GPS, a sole

proprietorship owned by Plaintiff Don Mastrangelo ("Mastrangelo").[1]

          The parties do not dispute that the Contract granted Mastrangelo the

right to sell Procon's GPS devices in Hawaii in exchange for paying a monthly fee

to Procon.  (Mot. at 5–8.)  The Contract included a provision allowing Procon to

terminate the Contract without cause at any time with thirty days notice, or for

cause if Hawaiian GPS failed to comply with the terms of the Contract or failed to

pay any fees owed to Procon.  (See Doc. # 29-12 ¶ 7.1.)

          According to Plaintiffs, after Mastrangelo began selling Procon

products, he "began to lose faith in Procon Products and Services."  (Mot. at 11.)

Beginning in mid-2010, Mastrangelo and his wife, Rachael Mastrangelo, began

---

[1] Because Hawaiian GPS is a sole proprietorship, the Court will refer to it as
"Mastrangelo" for purposes of clarity.

developing an "alternative vendor" called GPS Heroes. (Id.) The purpose of GPS Heroes was to "(1) improve product performance and customer service that was lacking by Procon and (2) insure that there would be no interruption in service resulting from Hawaiian GPS' financial condition" as well as to "increas[e] Hawaiian GPS' cashflow significantly, thereby placing Hawaiian GPS in a far better position to pay unpaid Contractual Fees owing to Procon." (Id. at 13.)

It is undisputed that Mastrangelo began to fall behind on his monthly contractual payments to Procon beginning in late 2010. (See id. at 12; Doc. # 33 at 8.) According to Plaintiffs, Mastrangelo and Procon entered into a "Workout Arrangement" on February 14, 2011, whereby Mastrangelo would pay Procon $5,000 per week to reduce his accruing balance. (Mot. at 12.)

Procon and Mastrangelo exchanged emails on May 20 and 21, 2011, discussing Mastrangelo's unpaid balance. (See Doc. # 29-2 at 5–8.) In one such email, Procon informs Mastrangelo that his unpaid balance is nearly $114,000, and states that "[t]his is fair notice to you that if you can't begin (starting in June) to make an additional 10K per month in payments that we will take over all your monthly service billing and keep all revenue and apply that against your balance." (Id. at 7.)

By the end of May 2011, the Mastrangelos had allegedly completed development of their GPS Heroes system.  (Mot. at 13.)  In June 2011, Rachael Mastrangelo registered RLM Business Solutions, Inc. ("RLM") as a sole proprietorship to serve as the owner and vendor of GPS Heroes.  (Id. at 14.)  On June 30, 2011, "cancellation notices" were purportedly submitted to Procon.  (Id.)  Plaintiffs contend that these notices show that a number of Mastrangelo's customers had stopped using Procon products and switched to the new GPS Heroes system.  (Id.)  On July 22, 2011, Mastrangelo sent all of his Hawaiian GPS customers an email introducing the new GPS Heroes System and describing it as "faster than our original system."  (Doc. # 29-3 at 1.)  The email notifies recipients that "we have decided to upgrade all of our customers to our new GPS Heroes system - at no cost to you" and notes that "we have complete control of this system (no mainland partner) which means that new features are easier to implement, and if any sort of failure occurs we can respond much faster."  (Id.)  The email further states that "we need to touch each of your vehicles and replace the units in them with a new one . . . ."  (Id.)

On August 3, 2011, Procon notified Mastrangelo via email that the Contract was terminated for cause, effective immediately, "due to your unpaid balance and . . .  refusal to pay after previous notice."  (Doc. # 29-4.)

On that same day, Defendants also sent an email ("Email") to Mastrangelo's customers[2], stating, "You may have already received notification from Don Mastrangelo company [sic] HawaiianGPS or Ready Set Go that the existing GPS tracking devices currently installed in your vehicles need to be replaced. This is false . . . ." (Doc. # 29-6.) The Email informed recipients that:

> [O]ur company supplied Don's company with product and service but marketed under his own brand, we were the engine behind his name.
>
> Unfortunately Don did not live up to his agreement and has defaulted due to non-payment of your services that he has been billing and collecting from you. As a result he has left us with no alternative than to offer you service directly to insure you have continued use of the system and the technology that you have already invested in . . . .

(Id.) The Email went on to offer customers the option of continuing to use Procon's products by logging in directly through Procon's website, Vehiclepath.com, and sending Procon a credit card authorization form. (Id.)

On August 5, 2011, Procon's counsel sent Mastrangelo a letter ("Letter") informing Mastrangelo that the Contract had been terminated on August 3, 2011 as a result of Mastrangelo's continued breach of the Contract. (Doc. # 29-5.) The Letter notes that Procon had previously notified Mastrangelo of his

---

[2]Based on representations made by counsel at the hearing, the parties appear to dispute whether and to what extent any of these customers were Procon customers.

overdue balance on May 20, 2011, but that Mastrangelo continued to owe

Defendants an unpaid balance.  (Id.)  The Letter then informs Mastrangelo that all

of his customers were transferred to Procon, pursuant to Section 7.1 of the

Contract.  (Id.)  Lastly, the letter demands that Mastrangelo immediately pay the

full past amount due and that he cease and desist from interfering with the business

relationship and contract that Procon has with its customers.  (Id.)

On August 9, 2011, Procon sent another email to the customers

containing a copy of the previous email for those who were "unfamiliar with what

ha[d] transpired."  (Doc. # 29-8.)  The email goes on to offer lower rates and a

lifetime warranty to incentivize customers to continue using Procon's products.

(Id.)

Plaintiffs allege that Procon's Email to the customers and Letter to

Mastrangelo "intentionally, maliciously, knowingly, recklessly and/or negligently

made false representations of fact."  (Id. ¶¶ 12, 15.)  Plaintiffs further allege that

Defendants knew these representations were false at the time they were made, and

made them "for the purpose of improperly interfering with Plaintiffs' business

relationships with their respective Customers[.]"  (Id. ¶¶ 13, 16.)  According to

Plaintiffs, Procon wrote the Email "to harass and retaliate against Plaintiffs and to

obtain said Customers on behalf of and for the sole benefit of Vehiclepath/Procon"

and sent Mastrangelo the Letter "for the purpose of creating friction and tension

between Plaintiffs and their respective Customers . . ." (Id. ¶ 16.)  Finally,

Plaintiffs allege that "[i]t is believed that most, if not all, of the Customers were

contacted by one or more of the Defendants beginning on August 3, 2011" and that

"[a]s of the date of filing hereof, these improper and defamatory communications

continue." (Id. ¶ 17.)

   Defendants, for their part, contend that Mastrangelo and his wife:

> concocted a scheme to create a new business entity intended to
> transfer Fleet Customers from Procon Fleet to their new entity which
> they named GPS Heroes.  Utilizing Procon Fleet's business plans,
> products, pricing, processes, intellectual property, know-how, trade
> secrets, methods, disclosures, business, technical, financial and/or
> other information, Mastrangelo prepared to sell GPS services to Fleet
> Customers and therein induce those Fleet Customers to terminate their
> subscriptions to Procon Fleet internet and wireless-enabled
> monitoring and tracking devices.

(Doc. # 33 at 8.)  Defendants assert that "instead of making the monthly payments

due and owing to Procon Fleet, Mastrangelo used the money he collected from the

Fleet Customers to fund and operate GPS Heroes . . . ." (Id. at 9.)  Defendants also

claim that Mastrangelo's email to his Hawaiian GPS customers on August 3, 2011,

(see Doc. # 29-7), contained misrepresentations that Hawaiian GPS was no longer using Procon's services.  (Doc. # 33 at 11.)

According to Defendants, as of August 2011, Mastrangelo owed Procon $105,513.85, plus accruing interest.  (Id. at 12.)

II.    Procedural Background

On August 10, 2011, Plaintiffs filed the instant action in the Circuit Court of the Third Circuit, State of Hawaii, against Procon Fleet Services, LLC, Vehicle Path, Inc., DriveOK, Inc., Gary Schneider, Rebecca Diaz, Jennifer Vegos, Alfonso Cecena, Sarah Barlam, John L. Wood, Egerton McAfee Armistead & Davis, P.C., and Starcomm Wireless, Inc.  ("Compl.," Doc. # 1-2.)  In their Complaint, Plaintiffs allege the following causes of action: (1) Defamation, (2) Tortious Interference, (3) Conversion, Theft, et al., (4) Deception, and (5) Fraud, Unfair Trade, et al.  (Id. ¶¶ 20–40.)

On November 18, 2011, the Circuit Court issued an order dismissing with prejudice all claims against Starcomm Wireless, Inc., Rebecca Diaz, Jennifer Vegos, Alfonso Cecena, Sarah Barlam, John L. Wood, and Egerton McAfee Armistead & Davis, PC.  (Doc. # 1-39.)  Therefore, the remaining Defendants in the action are Procon Fleet Services, LLC ("Procon"), Vehicle Path, Inc., DriveOK

Inc., and Gary Schneider (collectively, "Defendants").[3]  On November 28, 2011,

Defendants removed this action to federal court.  (Id.)

On December 5, 2011, Defendants filed an Answer to the Complaint.

(Doc. # 6.)  On the same day, Defendants filed a Counterclaim against Plaintiffs.

("Countercl." Doc. # 7.)  The Counterclaim alleged the following causes of action:

(1) Breach of Contract; (2) Breach of Implied Covenant of Good Faith and Fair

Dealing; (3) Intentional and/or Negligent Misrepresentation; (4) Fraud; (5) Unjust

Enrichment; (6) Failure to Disclosure Material Facts; (7) Estoppel; (8) Conversion;

(9) Accounting; (10) Negligent or Intentional Interference with Prospective

Economic Advantage; and (11) Injunctive Relief.  (Id.)  On December 13, 2011,

Plaintiffs filed an Answer to the Counterclaim.  (Doc. # 14.)

On February 7, 2012, Plaintiffs filed the instant Motion for Partial

Summary Judgment.  ("Mot.," Doc. # 29.)  On March 19, 2012, Defendants filed

an Opposition to the Motion.  ("Opp'n," Doc. # 33.)  Plaintiffs filed a Reply on

March 27, 2012.  ("Reply," Doc. # 38.)

---

[3] Defendants note in their Counterclaim that Procon acquired DriveOK, Inc. through a statutory merger in November 2008.  (See Doc. # 7 ¶ 5.)  Defendants also note that Vehicle Path, Inc. does not exist and is not registered or doing business in any state at any time.  (Id. ¶ 6.)

## STANDARD OF REVIEW

Summary judgment is granted under Federal Rule of Civil Procedure 56 when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323.  A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence' " must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134. Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)). "Conclusory allegations unsupported by factual data

11

cannot defeat summary judgment." Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id.; see also Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted). However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

Plaintiffs assert that they are entitled to summary judgment as to their Defamation claim (Count I) and their Tortious Interference claim (Count II). For

the reasons set forth below, the Court **DENIES** Plaintiffs' Motion for Partial

Summary Judgment.

I.      <u>Motion to Strike</u>

As a preliminary matter, the Court notes that in their Reply, Plaintiffs

move to strike various factual statements in Defendants' Opposition brief on the

ground that the statements lack citation to the record and/or are unsupported by the

record.  A motion to strike is proper when a pleading contains "any redundant,

immaterial, impertinent, or scandalous matter."  Fed. R. Civ. Proc. 12(f).  The

purpose of a motion to strike is "to avoid the expenditure of time and money that

must arise from litigating spurious issues by dispensing with those issues prior to

trial."  <u>Whittlestone, Inc. v. Handi–Craft Co.</u>, 618 F.3d 970, 974 (9th Cir. 2010)

(citing <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1993), <u>rev'd on</u>

<u>other grounds</u>, 510 U.S. 517 (1994)).  Here, whether or not Defendant's factual

statements are true is a matter of proof, not pleading.  Plaintiffs' motion to strike is

therefore **DENIED**.  See <u>Whittlestone, Inc. v. Handi–Craft Co.</u>, 618 F.3d 970, 974

(9th Cir. 2010) (in ruling on a motion to strike, a "court[ ] may not resolve disputed

and substantial factual or legal issues . . . ."  However, the Court notes that in

ruling on the instant motion, this Court is not relying on unsupported factual

averments in either side's briefs.

II.   <u>Defamation</u>

In Count I of the Complaint, Plaintiffs allege a defamation claim against Defendants. The Hawaii Supreme Court has established that the following four elements are necessary to sustain a claim for defamation:

> (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher [actual malice where the plaintiff is a public figure]; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

<u>Gonsalves v. Nissan Motor Corp. in Haw., Ltd.</u>, 58 P.3d 1196, 1218 (Haw. 2002) (citing <u>Gold v. Harrison</u>, 962 P.2d 353, 359 (Haw. 1998)). "The threshold issue in defamation cases is whether, as a matter of law, the statements at issue are reasonably susceptible of a defamatory meaning." <u>Gold</u>, 962 P.2d at 360 (citing <u>Fernandes v. Tenbruggencate</u>, 649 P.2d 1144, 1147 (Haw. 1982)). "A communication is defamatory when it tends to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him." <u>Fernandes</u>, 649 P.2d at 1147 (citation and internal quotation marks omitted). The alleged defamatory statement "must be communicated to some third party other than the person defamed." <u>Runnels v. Okamoto</u>, 525 P.2d 1125, 1127 (Haw. 1974).

Here, Plaintiffs allege that:

> Defendants have falsely and maliciously communicated in writing and verbally to Plaintiffs' respective Customers defamatory Statements regarding (1) the truth and honesty of the Plaintiffs, (2) the alleged criminality of the Plaintiffs, (3) the morality of the Plaintiffs and (4) other defamatory statements regarding the Plaintiff.

(Compl. ¶ 21.)  Plaintiffs claim that the allegedly defamatory statements appear in the Letter to Mastrangelo and the Email to Mastrangelo's customers.  (Mot. at 17–21.)

Defendants contend that Plaintiffs are not entitled to summary judgment on their defamation claim because all the information in the Email was factual and accurate, and because Defendants were exercising a qualified privilege when they contacted Plaintiffs' customers.  (See Opp'n at 15–16.)  Defendants also argue that Plaintiff RLM is not entitled to summary judgment regarding any alleged defamatory statements because Plaintiffs have not proffered any statements made by Defendants that identify Plaintiff RLM by name or otherwise refer to RLM.  (Id.)

As a preliminary matter, the Court finds as a matter of law that the statements in the Letter cannot support a claim for defamation because the Letter was sent to Mastrangelo, not to a third party.  (See Compl. ¶¶ 15–16.)  It follows that these statements do not meet the second element of a defamation claim,

namely, "an unprivileged publication <u>to a third party</u>."  <u>See</u> <u>Gonsalves</u>, 58 P.3d at 1218 (emphasis added).

Insofar as Plaintiffs' defamation claim is based on statements in the Email, the Court finds that Plaintiffs have not met their initial burden of showing the absence of any material issue of fact as to this claim.  <u>See</u> <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.  The exhibits attached to Plaintiffs' Motion do not provide the Court any basis on which to find that the statements in the Email were false, a necessary element of a defamation claim.  <u>See</u> <u>Gonsalves</u>, 58 P.3d at 1218.

Indeed, Plaintiffs' exhibits tend to show that the statements in the Email were factually accurate.  For example, Plaintiffs attach as an exhibit Mastrangelo's email to customers informing them that "we need to touch each of your vehicles and replace the units in them with a new one . . . ."  (Doc. # 29-3.) This substantiates Procon's statement in its Email that Mastrangelo told customers that their GPS devices needed to be replaced.  (<u>See</u> Compl. ¶ 11.)  In addition, Plaintiffs' exhibits confirm that Mastrangelo had not fully paid Procon its contractual fees in the months prior to the termination of the Contract.  (<u>See generally</u> Doc. # 29-2)  For example, in an email dated April 27, 2011, Mastrangelo states "I did not send [a wire payment] last Friday, and I won't be able to send one this week either . . . ."  (Doc. # 29-2 at 3.)  Exhibits such as these

suggest that Procon's statement that "Don did not live up to his agreement" may be a factually accurate representation. (<u>See</u> Compl. ¶ 11.)

Lastly, Plaintiffs' motion makes passing references to Procon's two alleged "telephonic campaigns" aimed at Plaintiffs' customers after Procon sent the August 3, 2011 Email. (<u>See</u> Mot. at 19, 23.) However, it is not clear to the Court what the nature and content of these telephonic communications were, let alone whether the statements contained in these communications were false or otherwise defamatory. Plaintiffs provide no factual allegations regarding these communications in their Complaint, nor do they submit any evidence as to the substance of these communications. Therefore, to the extent that Plaintiffs' defamation claim is based on these purported telephonic communications, Plaintiffs have not shown the absence of any genuine issue of material fact as to the defamatory nature of these communications.

Based on the evidence here presented, the Court finds that reasonable jurors, drawing all inferences in favor of Defendants, could return a verdict in Defendants' favor as to whether the statements at issue were false and defamatory. Since Plaintiffs have not met their initial burden of establishing the absence of a genuine issue of fact as to their defamation claim, the Court **DENIES** Plaintiffs' motion for summary judgment as to Count I of their Complaint.

III.     Tortious Interference

          In Count II of the Complaint, Plaintiffs allege a claim for tortious

interference.  The elements of the intentional tort of tortious interference with

prospective business advantage are:

> (1) the existence of a valid business relationship or a prospective advantage
> or expectancy sufficiently definite, specific, and capable of acceptance in the
> sense that there is a reasonable probability of it maturing into a future
> economic benefit to the plaintiff; (2) knowledge of the relationship,
> advantage, or expectancy by the defendant; (3) a purposeful intent to
> interfere with the relationship, advantage, or expectancy; (4) legal causation
> between the act of interference and the impairment of the relationship,
> advantage, or expectancy; and (5) actual damages.

Sung v. Hamilton, 710 F. Supp. 2d 1036, 1049 (D. Haw. 2010) (citing Hawaii

Med. Assoc. v. Hawaii Med. Serv. Assoc., Inc., 148 P.3d 1179, 1218 (Haw.

2006)).  The third element "denotes purposefully improper interference . . . and

requires a state of mind or motive more culpable than mere intent."  Hawaii Med.

Assoc., 148 P.3d at 1218.  "The plaintiff must prove that the defendant either

pursued an improper objective of harming the plaintiff or used wrongful means that

caused injury in fact.  Asserting one's rights to maximize economic interests does

not create an interference of ill will or improper purpose."  Id.

Plaintiffs allege that:

> Defendants were aware of the existence of valid business relationships
> between the Plaintiffs and their respective Customers (the "Client
> Relationships"). Defendants' Statements/Reorientations and acts
> interfere with these Client Relationships and said interference was and
> continues to be intentional, malicious, unjustified, and done solely for
> the purpose of destroying the Client Relationships and advancing the
> Scheme.

(Compl. ¶¶ 25, 26.)

Defendants contend that Plaintiffs are not entitled to summary
judgment on this claim because Procon had an express contractual right to contact
Mastrangelo's customers, so Procon did not pursue an improper objective. (See
Opp'n at 19.) Additionally, Defendants note that none of Plaintiffs' proffered
exhibits identifies or otherwise mentions Plaintiff RLM. (See id.)

Here, as with Count I, Plaintiffs have not met their initial burden of
showing the absence of any genuine issue of material fact. See T.W. Elec. Serv.,
809 F.2d at 630. Specifically, Plaintiffs have not provided any evidence to show
that Defendants possessed an improper objective or had any intent to harm
Plaintiffs when they communicated with Plaintiffs' customers. To the contrary, the
many emails Plaintiffs provided to the Court indicate that Procon exercised an
extra degree of patience with Mastrangelo in allowing him to make late contractual
payments for several months without penalty, and went to great lengths to help

Mastrangelo maintain his contractual relationship with Procon before terminating the agreement and contacting Mastrangelo's customers. (See, e.g., Doc. # 29-2.) For example, in an email dated May 20, 2011, Procon tells Mastrangelo that:

> Once that balance becomes zero we can then consider reestablishing the relationship as a Reseller. I have had to do this with 2 other Resellers; one managed to come out of it and survived and we have since turned back over his customer base to him and one did not.

(Doc. # 29-2 at 7.) In light of these communications, it does not appear that Procon was pursuing an improper objective of harming Plaintiffs when it sent the Email. Rather, Procon appears to have been exercising its express contractual right to send a transfer notice to Mastrangelo's customers after the Contract was terminated for cause.[4] In short, the exhibits submitted by Plaintiffs do not provide the Court with any basis on which to grant summary judgment in Plaintiffs' favor.

Since Plaintiffs have not met their burden of demonstrating the absence of genuine issues of material fact as to their tortious interference claim, the Court **DENIES** Plaintiffs' motion for summary judgment as to Count II of the Complaint.

---

[4] Section 7.1 of the Contract provides, "In the event of termination of this Agreement by Vehiclepath either for cause or without cause, Vehiclepath shall be entitled to send transfer notice to Reseller's Fleet Customers and immediately transition or transfer the Fleet Customers to Vehiclepath or to any other Reseller at the discretion of Vehiclepath." (Doc. # 29-12 ¶ 7.1.)

CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiffs' Motion

for Partial Summary Judgment.

IT IS SO ORDERED.

Dated: Honolulu, Hawaii, April 9, 2012.



_____
David Alan Ezra
United States District Judge

RLM Business Solutions, Inc., et al. v. Procon Fleet Services, LLC, et al., Cv. No. 11-00712-DAE-KSC; ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT